[Doc. No. 20]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| NORMAL MAPLES,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF ATLANTIC CITY, JOHN DOE, and SCOTT FENTON,<br><br>        Defendants. | Civil No. 06-2200 (RMB)<br><br>**OPINION** |

APPEARANCES:

Demetrius J. Parrish
2824 Route 38
Avenues of Commerce, Suite 209
Cherry Hill, NJ 08002
    Attorney for Plaintiff

John Charles Hegarty
Solicitor's Office for Atlantic City
City Hall
1301 Bacharach Boulevard
Atlantic City, NJ 08401
    Attorney for Defendants

**BUMB**, United States District Judge:

**I.   INTRODUCTION**

This matter comes before the Court on Defendants' motion for summary judgment. Plaintiff's Second Amended Complaint contains three claims: Count I is a federal constitutional claim alleging unlawful arrest, Count II is a state constitutional claim

1

alleging unlawful arrest, and Count III is a state claim alleging tortious interference with economic advantage.  Defendants have moved for summary judgment as to all three counts.

**II.   FACTUAL BACKGROUND**

This matter arises out of an incident that occurred on May 14, 2004 in the emergency room of the Atlantic City Medical Center ("ACMC") in Atlantic City, New Jersey.  (Def. Motion at 8).  After a street fight had broken out among a group of females, Defendant Officer Scott Fenton ("Officer Fenton") accompanied the victims to ACMC to ensure the fighting did not continue.  However, while at ACMC, the fight broke out again and Officer Fenton physically intervened in an attempt to stop the fight.  (Id. at 1-2).  During the struggle, he was pulled to the floor and struck in the eye.  (Id. at 2).  Officer Fenton testified that while he was wrestling with one of the women involved in the fight, he heard a voice behind him say, "Get him, get that cop."  (Fenton Dep. at 23:1-8).[1]  Officer Fenton feared that the crowd in the emergency room was going to overtake him.  (Id. at 23:6-19).  However, backup officers arrived and the woman

---

[1] Contrary to Plaintiff's assertion that this Court must disregard Officer Fenton's testimony because he is an interested witness, "the Supreme Court has made it clear that self-serving testimony may be utilized by a party at summary judgment." Waldron v. SL Indus., Inc., 56 F.3d 491, 501 (3d Cir. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

struggling with Officer Fenton was handcuffed.  (Def. Motion at 2).

After the fighting ceased, Officer Fenton identified Plaintiff Norman Maples as the individual who had made the comment, "Get him, get that cop."  (Id.).  Plaintiff denied making that particular comment, but stated that he had told Officer Fenton to stop beating the woman because "there's no sense in [him] hitting somebody who's already subdued."  (Pl. Dep. at 37:9-12).  Plaintiff did not give his name when asked by Officer Fenton but just replied that he worked at ACMC and was going to report Officer Fenton.  (Pl. Dep. at 39:6-22).  However, later on, when Plaintiff was asked for his name by another officer, he gave his name and showed his hospital employee badge. (Id. at 40:17-21).

Plaintiff was then arrested at the direction of another officer - a Captain, who presumably learned of the events from Officer Fenton.  (Id. at 41:13-24).  During the arrest, Plaintiff claims he was jerked and thrown on the ground, although he suffered no physical injury, only "bruised pride."  (Id. at 42:19-43:2).  Plaintiff was then taken to the police station, finger printed, and placed in a cell, where he remained for several hours. (Pl. Opp. at 6).  Upon his release, he was given tickets for obstruction of justice and inciting a riot.  (Id.; Pl. Dep. at 43:16-18).

3

**III. STANDARD OF REVIEW**

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  See id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  See id.  "In making this determination, a court must make all reasonable inferences in favor of the non-movant."  Oscar Mayer Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D.N.J. 1990) (citing Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983)).  "At the summary judgment stage the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.

**IV. DISCUSSION**

    **A. Federal Claim (§ 1983) - Unlawful Arrest (Count I)**

In Count I, Plaintiff brings a claim pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his civil rights.  When

4

bringing an action under 42 U.S.C. § 1983, a plaintiff must satisfy a two-prong test by showing that: 1) the conduct complained of was committed by a person acting under color of state law, and 2) the conduct deprived that person of rights guaranteed by the United States Constitution.  West v. Atkins, 487 U.S. 42, 48 (1988).

Plaintiff alleges that Defendants unlawfully arrested him in violation of his Fourteenth Amendment rights.  As an initial matter, the Court notes that a claim of unlawful arrest should be brought under the Fourth Amendment, which ensures citizens the right to be free from unreasonable seizures.  Reading the Complaint in the light most favorable to Plaintiff, the Court will presume that Plaintiff intended to bring this claim of unlawful arrest under the Fourth Amendment.

Because individuals and municipal governments are treated differently under § 1983, the Court will address this claim against Officer Fenton separately from the claim against Atlantic City.

### 1.   Officer Fenton

Plaintiff brings this § 1983 claim against Officer Fenton in both his individual and official capacities.  However, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).

Thus, Plaintiff's claim against Officer Fenton in his official capacity is barred and the Court will consider the claim against Officer Fenton only in his individual capacity.

Although Officer Fenton was not the officer who actually effectuated the arrest of Plaintiff, he was the officer who identified Plaintiff as the hospital employee who made the comment. Because Officer Fenton was the only officer present during the hospital scuffle and exchange with Plaintiff, the record supports the conclusion that Officer Fenton must have relayed the events to the Captain, who then ordered another officer to arrest Plaintiff. Moreover, it is undisputed that Officer Fenton was the officer who charged Plaintiff with violations of two New Jersey statutes - Obstructing the Administration of Law and Disorderly Conduct. Thus, the record shows that Officer Fenton was instrumental in the arrest of Plaintiff. For the sake of simplicity, the Court will refer to Officer Fenton's conduct as arresting Plaintiff.

Plaintiff alleges that Officer Fenton committed a constitutional violation by unlawfully arresting him. An arrest is unlawful and, thus, actionable if it is effectuated without probable cause. Patzig v. O'Neil, 577 F.2d 841, 848 (3d Cir. 1978). Probable cause exists when the facts are such that a reasonably prudent person would believe that a crime had been committed. Gerstein v. Pugh, 420 U.S. 103, 111 (1975).

6

Here, Plaintiff was arrested and charged with two separate violations: Obstructing the Administration of Law (violation of N.J. Stat. 2C:29-1a) and Disorderly Conduct (violation of N.J. Stat. 2C:33-2a(1)). Thus, the Court must determine whether the facts available to Officer Fenton at the time of arrest would warrant a reasonably prudent person to believe that Plaintiff had committed these violations. Beck v. State of Ohio, 379 U.S. 89, 98 (1964) ("[w]hen the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed") (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)).

### a. Obstructing the Administration of Law

Under New Jersey law,

> [a] person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act.

N.J. Stat. Ann. 2C:29-1a. Officer Fenton contends that Plaintiff was arrested and charged with obstructing an investigation because Plaintiff refused to provide his name when Officer Fenton asked him to do so. Plaintiff does not dispute that he evaded Officer Fenton's request to identify himself. (Pl. Dep. at 39:7-

22).  Rather, Plaintiff argues that Officer Fenton's reason for arresting him "lacks credibility where Plaintiff Maples, as a hospital employee, was wearing a name badge that any officer could have seen."  (Pl. Opp. at 16).  Alternatively, Plaintiff argues, "the inquiring officer simply could have asked another employee about the Plaintiff."  (Id.).

This Court does not agree with Plaintiff's suggested solutions.  Here, when Officer Fenton asked Plaintiff his name, Plaintiff should have identified himself.[2]  Indeed, when the reverse occurred and Plaintiff asked Officer Fenton who he was, Officer Fenton gave Plaintiff his name.  (Pl. Dep. at 39:13-15).  The undisputed record shows that Plaintiff did in fact refuse to identify himself to Officer Fenton.  (Id. at 39:7-22).  It was not until later, when other officers arrived, that Plaintiff gave his name to a different officer who inquired.  (Id. at 40:17-21).  By failing to identify himself, Plaintiff gave Officer Fenton good reason to believe that Plaintiff was obstructing Officer Fenton's investigation.  Thus, this Court finds that Officer Fenton had probable cause to arrest Plaintiff for obstructing the

---

[2] Plaintiff does not allege any Fifth Amendment violation. Indeed, as best this Court can tell, Plaintiff refused to identify himself only because he thought his name was none of Officer Fenton's business, not because he feared that "his name would be used to incriminate him, or that it 'would furnish a link in the chain of evidence needed to prosecute' him." Hiibel v. Sixth Judicial Dist. Court of Nevada, 542 U.S. 177, 190 (2004) (quoting Hoffman v. United States, 341 U.S. 479, 486 (1951)).

administration of law.

### b. Disorderly Conduct

New Jersey's disorderly conduct statute provides,

> [a] person is guilty of a petty disorderly persons offense, if with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he ... [e]ngages in fighting or threatening, or in violent or tumultuous behavior...

N.J. Stat. Ann. 2C:33-2a(1). Officer Fenton asserts that he arrested and charged Plaintiff with a violation of this statute because he believed Plaintiff had attempted to incite a riot in the hospital emergency room. Specifically, Officer Fenton testified that while he was involved in a physical struggle with a woman on the floor, he heard someone yell, "Get him, get that cop." (Fenton Dep. at 23:1-4). Plaintiff denied that he was the person who made that particular comment, but he admitted that he had said something to the effect of telling Officer Fenton "to stop doing what he was doing...there's no sense in you hitting somebody who's already subdued." (Pl. Dep. at 37:10-12).

Whether or not Plaintiff made the comment, this Court concludes that Defendant nonetheless had probable cause to arrest Plaintiff. Taking the facts in the light most favorable to Plaintiff - i.e., that Officer Fenton was mistaken in believing that Plaintiff had made the comment - that mistake does not negate the existence of probable cause. The Supreme Court has explained that,

9

> [b]ecause many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.

Illinois v. Rodriquez, 497 U.S. 177, 186 (1990) (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)). Thus, as long as Officer Fenton's mistaken belief was reasonable in light of the circumstances, such mistake will not change the probable cause determination. Cf. Maryland v. Garrison, 480 U.S. 79, 85 (1987) (holding that court "must judge the constitutionality of [officers'] conduct in light of the information available at the time they acted" and "the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant"); Cambist Films, Inc. v. Duggan, 475 F.2d 887, 889 (3d Cir. 1973) ("even though it was later found ... that the facts were not sufficient to [warrant seizure], the facts and circumstances available to the officers at the time of seizure were such as to provide an ordinary person with a reasonable belief that an offense was being committed").

    Turning to the circumstances in this case, Plaintiff does not dispute that he was present when Officer Fenton heard someone say, "Get him, get that cop." Indeed, Plaintiff admits that he watched Officer Fenton struggle with a woman on the floor of the emergency room and told Officer Fenton to stop what he was doing. (Pl. Dep. at 37:10-12). Given these admissions and the

10

surrounding circumstances as described in the record, this Court concludes that the facts available to Officer Fenton at the time of arrest would warrant a reasonable person to believe that Plaintiff had made the comment and was attempting to incite a riot.  Accordingly, even if such belief was mistaken, Officer Fenton had probable cause to arrest Plaintiff for disorderly conduct.

In sum, this Court finds that Officer Fenton had probable cause to arrest Plaintiff for both violations.  Accordingly, Plaintiff was lawfully arrested and Officer Fenton is not liable.[3]

### 2. Defendant Atlantic City

The Court now turns to Plaintiff's § 1983 claim asserted against Defendant Atlantic City.  It is axiomatic that local government units, such as Atlantic City, are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell, 436 U.S. at 690-91, 694.  However, a § 1983 action may be brought against a local government when the local government is shown to be the "moving force" behind the constitutional violation.  Monell, 436 U.S. at 690 n.55; Kentucky v. Graham, 473 U.S. 159,

---

[3] The Court notes that Defendants' brief focuses on a qualified immunity defense as to Plaintiff's federal claim of unlawful arrest.  However, because this Court has found that no constitutional violation occurred, it need not reach the issue of qualified immunity.

166 (1985) ("governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation"). In Monell, the Supreme Court created two means of establishing local governmental liability under section 1983: policy and custom. As set forth by the Third Circuit,

> [a] government policy or custom can be established in two ways. Policy is made when a "decision maker possessing final authority to establish municipal policy with respect to the action" issues an official proclamation, policy or edict. A course of conduct is considered to be a "custom when, though not authorized by law, such practices of state officials [are] so permanent and well settled" as to virtually constitute law.

Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (internal citations omitted).

Custom may be established by evidence of knowledge and acquiescence on the part of policymakers. See Fletcher v. O'Donnell, 867 F.2d 791, 793 (3d Cir. 1989). A plaintiff must show that the policymaking officials knew, or should have known, about the illegal practices and, therefore, tacitly authorized a custom of tolerating their officers' supposedly illegal activities. See Beck v. City of Pittsburgh, 89 F.3d 966, 973 (3d Cir 1996) (discussing tacit authorization of excessive force). Custom may also be established by evidence of inadequate police training procedures, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). Moreover, unless the policy or custom at issue

is, itself, unconstitutional, courts have generally held that "more proof than [a] single incident will be necessary ... to establish both the requisite fault on the part of the municipality and the causal connection between the 'policy' and the constitutional deprivation." City of Oklahoma City, 471 U.S. at 824.

Thus, in order to establish liability against Defendant Atlantic City, Plaintiff must identify the illegal conduct properly attributable to the city and show that the city was the "moving force" behind the alleged injury.  This means that the Plaintiff "must show that the action was taken with the requisite degree of culpability and [] demonstrate a direct causal link between the [County] action and the deprivation of federal rights." Bd. of the County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997).

Plaintiff argues that "the City of Atlantic City ratified the unconstitutional acts of Defendant Fenton, thus rendering his behavior official."  (Pl. Opp. at 12).  However, given the Court's determination that Officer Fenton's actions were not unconstitutional, the Court need not delve into the analysis of whether the City "ratified" such conduct.  Without any underlying constitutional violation, the City cannot be held liable. Accordingly, Defendant Atlantic City is entitled to summary judgment on Plaintiff's § 1983 claim.

13

**B.   State Claims (Counts II and III)**

Defendants argue that Plaintiff's state law claims fail because Plaintiff failed to file a tort claim notice, as required by the New Jersey Tort Claims Act ("NJTCA").  (Def. Motion at 14).  The NJTCA provides in relevant part,

> [a] claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the <u>ninetieth day after accrual</u> of the case of action. ...  The claimant is forever barred from recovering against a public entity or public employee if
>
>> a. He failed to file his claim with the public entity within 90 days of accrual of his claim except as provided in section 59:8-9 [which allows the Superior Court to grant the claimant an extension of up to one year in extraordinary circumstances]...

N.J. Stat. Ann. 59:8-8 (emphasis added).  Thus, barring extraordinary circumstances, the NJTCA requires that Plaintiff file a tort claim notice within 90 days of the accrual of his tort claims.

The law is clear that the "NJTCA does not apply to federal and state constitutional claims because a state statute may not abrogate an individual's constitutional rights."  <u>County Concrete Corp. v. Town of Roxbury</u>, 442 F.3d 159, 174 (3d Cir. 2006) (citing <u>Greenway Dev. Co. v. Borough of Paramus</u>, 163 N.J. 546, 558 (2000)).  Accordingly, the notice requirement only applies to Plaintiff's claim of tortious interference (Count III), not his state constitutional claim of unlawful arrest (Count II).  <u>See</u>

Garlanger v. Verbeke, 223 F. Supp. 2d 596, 604 (D.N.J. 2002) (holding that plaintiff's failure to comply with notice of claim provision of NJTCA did not bar plaintiff's claim based on violations of civil rights protected by New Jersey constitution).

### 1. State Constitutional Claim - Unlawful Arrest (Count II)

In Count II, Plaintiff alleges a state claim based on unlawful arrest in violation of the New Jersey Constitution. Article I, paragraph 7 of the New Jersey Constitution provides,

> [t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause...

N.J. Const. art. 1, ¶7.  Thus, "probable cause is the constitutionally-imposed standard for determining whether a search and seizure is lawful."  State v. Novembrino, 105 N.J. 95, 105 (1987) (comparing Fourth Amendment of Federal Constitution and Article I, paragraph 7 of New Jersey Constitution); see also State v. Scott, 231 N.J. Super. 258, 265 (N.J. Super. Ct. App. Div. 1989), rev'd on other grounds ("[t]o be lawful an arrest must be based upon probable cause").[4]

---

[4] The Court notes that the Second Amended Complaint titles Count II as "Unlawful Detention and Arrest" and claims that Defendants "violated Plaintiff's constitutional and civil rights."  (Second Am. Compl. ¶ 19).  The Court has interpreted Count II as a state constitutional claim of unlawful arrest. However, to the extent Plaintiff intended this count to be a

New Jersey Courts have held that the "standard for probable cause is identical under both the Fourth Amendment of the Federal Constitution and Article I, Paragraph 7 of the New Jersey Constitution." Orlowski v. Borough of Sayreville, 2007 WL 2005255 at *17 (N.J. Super. Ct. App. Div. July 11, 2007) (citing Novembrino, 105 N.J. at 122). Given the Court's determination that Officer Fenton had probable cause to arrest Plaintiff, the arrest was lawful under the New Jersey Constitution and Officer Fenton is not liable.

Moreover, New Jersey law provides that "a public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable." N.J.S.A. 59:2-2. Because this Court has determined that Officer Fenton is not liable for unlawful arrest, Defendant Atlantic City cannot be held liable either.

Thus, Plaintiff's state claim of unlawful arrest fails for the same reasons Plaintiff's federal unlawful arrest claim fails. Accordingly, Defendants are entitled to summary judgment as to this claim.

---

state tort claim of false arrest and/or imprisonment, the Court notes that "[l]egal justification or probable cause for detention are the defenses to an action for false arrest or imprisonment." Green v. City of Paterson, 971 F. Supp. 891, 909 (D.N.J. 1997) (quoting Hayes v. Mercer County, 217 N.J. Super. 614, 623 (N.J. Super. App. Div. (1987)). Thus, the same probable cause standard applies regardless of which claim Plaintiff intended to bring.

16

### 2. State Law Claim - Tortious Interference with Economic Advantage (Count III)

Finally, in Count III, Plaintiff alleges a state law claim of tortious interference with economic advantage. As discussed above, the NJTCA requires that Plaintiff file a tort claim notice within 90 days of the accrual date of the claim. Plaintiff argues that the NJTCA does not apply to this claim for tortious interference because "[t]he Tort Claims Act clearly anticipates provable physical injuries" and Plaintiff "specifically denied that he sustained any physical injuries." (Pl. Opp. at 19). However, Plaintiff cites no authority for this proposition.

Contrary to Plaintiff's assertion, the NJTCA contains nothing that would suggest it only applies to actions involving physical damages. Indeed, the only exception recognized by the courts is for constitutional torts, as explained above. Greenway Dev. Co., Inc. v. Borough of Paramus, 163 N.J. 546 (2000); cf. Rolax v. Whitman, 53 Fed. Appx. 635, 638 (3d Cir. 2002) (holding NJTCA applies to invasion of privacy claim because that is not a constitutional tort but a "creature of state law"); Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 357 (N.J. Super. Ct. App. Div. 1993) (noting that plaintiff complied with NJTCA notice provisions by filing notice of claim for tortious interference with economic advantage). Thus, the NJTCA notice provision does apply to Plaintiff's claim for tortious interference with economic advantage.

It is undisputed that Plaintiff never filed any such notice within 90 days of his termination from his job at ACMC, which would constitute the accrual date of the claim.  See P.T. & L. Const. Co. Inc. v. Madigan & Hyland, Inc., 245 N.J. Super. 201, 207 (N.J. Super. Ct. App. Div. 1991) ("cause of action grounded in tort accrues, not when the tortious act occurs, but when the consequential injury or the damage occurs").  Accordingly, Plaintiff's claim for tortious interference is barred by the NJTCA and Defendants are entitled to summary judgment.

**V.   CONCLUSION**

For the aforementioned reasons, this Court holds that Defendants' motion for summary judgment is granted as to all Counts.  An appropriate Order will issue this date.

Dated:  June 16, 2008              s/Renée Marie Bumb
                                   RENÉE MARIE BUMB
                                   UNITED STATES DISTRICT JUDGE